**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) Case Number |
| | ) 4:25-CR-00329 |
| **vs.** | ) |
| | ) |
| **MARYAM QAYUM(1),** | ) Houston, Texas |
| **Defendant.** | ) March 26, 2026 |

**************************************************

**RE-ARRAIGNMENT and GUILTY PLEA**
**BEFORE THE HONORABLE DAVID HITTNER**
**UNITED STATES DISTRICT JUDGE**

**APPEARANCES:**
**FOR THE GOVERNMENT:**
**Devon Morel Helfmeyer**
**Assistant U.S. Attorney**
**United States Attorney's Office**
1000 Louisiana, Suite 2300
Houston, Texas  77002
(713)567-9513; devon.helfmeyer@usdoj.gov

**FOR THE DEFENDANT:**
**Ashli Summer McKeivier**
**Chapman Law Group**
880 W. Long Lake Road, Suite 150
Troy, Michigan  48098
(248)644-6326; smckeivier@chapmanlawgroup.com

**John Hunter Smith**
**Wynne Smith and Young PLLC**
707 W. Washington
Sherman, Texas  75091
(903)893-8177; jmsmith@wynnesmithlaw.com

\* \* \* \* \*

COURT REPORTER:
Angela M. Hailey, CSR, CRR, RPR, RMR
Official Court Reporter, U.S.D.C.
515 Rusk Street, 8th Floor, Suite 8004
Houston, Texas  77002
Phone(713)250-5787; angela_hailey@txs.uscourts.gov

Proceedings reported by stenotype, transcript produced by
computer-aided transcription.

U.S.D.C. Official Court Reporter
Angela M. Hailey

*(Thursday, March 26, 2026, 2:00 p.m.)*

         * * *

  COURT CRIER:  All rise.

  THE COURT:  Thank you, be seated.  Sorry for running a little bit late, I was going over this joint motion for, what is it, release.  As you can see, it's all marked up.  That's what I was doing exactly in there, marking it up and looking through it.  Not only looking through it, but reading it, so give me a second.  Let me sign some of these papers.

  The Court calls the case, criminal matter, 25-329, United States versus Maryam Qayum.  Who represents the government?

  MR. HELFMEYER:  Good afternoon, Your Honor.  Devon Helfmeyer on behalf of the United States.

  THE COURT:  And who represents the defense?

  MS. MCKEIVIER:  Good afternoon, Your Honor.  Summer McKeivier on behalf of Dr. Qayum.

  MR. SMITH:  John Hunter Smith on behalf of Dr. Qayum.

  THE COURT:  All right.  I understand you want to enter a plea of guilty in this case; is that correct?

  THE DEFENDANT:  Yes, it is.

  THE COURT:  And you need to get by the -- move the microphone over.  Raise your right hand and be sworn.

         * * *

  *(Oath administered and MARYAM QAYUM, defendant, duly*

*sworn.)*

                              *   *   *

THE DEFENDANT:  I do.

THE COURT:  Okay.  You understand you're now under oath and if you answer any of my questions falsely, they may be later used against you in another prosecution for perjury? That's for making a false statement.

THE DEFENDANT:  Yes, I do.

THE COURT:  State your full name.

THE DEFENDANT:  Maryam Qayum.

THE COURT:  Age?

THE DEFENDANT:  Sixty-seven.

THE COURT:  Education?

THE DEFENDANT:  M.D.

THE COURT:  Education, where did you go to school?

THE DEFENDANT:  LSU Medical School.

THE COURT:  What year?

THE DEFENDANT:  I graduated in '93.

THE COURT:  Undergraduate school?

THE DEFENDANT:  Mississippi State.

THE COURT:  Have you ever been treated for any mental illness or addiction to narcotic drugs?

THE DEFENDANT:  No.

THE COURT:  Are you presently under the influence of any drug, medication or alcoholic beverage of any kind?

THE DEFENDANT:  No.

THE COURT:  Have you had sufficient time to consult with your attorneys?

THE DEFENDANT:  Yes.

THE COURT:  Are you satisfied with your attorneys?

THE DEFENDANT:  Yes.

THE COURT:  All right.  To both counsel, I'm going to ask you four questions at the same time.  Have you had sufficient time to investigate the law and the facts of your client's case now before the Court?  Does she understand the nature of the charges pending against her?  Has she been able to cooperate with you in every respect?  And in your opinion, is she now mentally competent?

MS. MCKEIVIER:  Yes, Your Honor.

MR. SMITH:  Yes, Your Honor.

THE COURT:  Okay.  Have you and your attorney received a copy of the indictment pending against you?  That's the written charges in this case.

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that today you're pleading to count one of the indictment which is -- what is it?

MR. HELFMEYER:  Drug conspiracy.

THE COURT:  Conspiracy to unlawfully distribute a controlled substance, it's a violation of 21 United States Code, Section 846.  The basic elements are two or more persons

directly or indirectly reach an agreement to distribute controlled substances without authorization, that is without a legitimate medical purpose or outside the usual course of professional practice, that the defendant knew of the unlawful purpose of the agreement, and the defendant joined in the agreement willfully, that is with the intent to further its unlawful purpose.

Penalty is imprisonment not to exceed 20 years in the federal penitentiary without parole, a fine of up to $1 million, at least three years supervised release, and a 100-dollar per count conviction.

Do you understand this to be the nature of the charges and the possible penalties pending against you?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand you have a right to continue to plead not guilty if you want to?

THE DEFENDANT:  I understand.

THE COURT:  All right.  Now, if you continue to plead not guilty, you would have had the right to a trial by jury or before the Court, during which you would have the right to the assistance of counsel for your defense, the right to see and hear all the witnesses and have them testify in your defense, the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense, the right to the issuance of subpoenas or compulsory process to compel the

attendance of witnesses to testify in your defense.

At trial the government would have to prove each element of the offense of which you are charged, beyond a reasonable doubt.  Do you further understand that by entering a plea of guilty, if that plea is accepted by the Court, there will be no trial and you will have waived or given up your right to a trial as well as other rights associated with a trial as I just described.

Do you also understand that if I accept your plea of guilty, you will be waiving all nine jurisdictional defects, if any, in this prosecution, such as any illegal search and seizure, a violation of your right to a speedy trial, and an inadmissible statement if you made one?  In other words, if I accept your plea of guilty, you'll not be able to raise all these defenses at a later time; do you understand that?

THE DEFENDANT:  I do.

THE COURT:  Okay.  Are you a citizen of the United States?

THE DEFENDANT:  Yes.

THE COURT:  As such, you need to understand that the charge that you're pleading guilty today is a felony offense and if your plea is accepted, you will be adjudged guilty of that offense and that such adjudication will deprive you of such rights as the right to vote, the right to hold public office, the right to serve on a jury, the right to possess any

kind of a firearm, and also that the Court has the authority to order restitution if it is available.  Do you understand all of that?

THE DEFENDANT:  I do.

THE COURT:  To the government, any plea agreement entered into between the parties?

MR. HELFMEYER:  It has, Your Honor.

THE COURT:  What is the consequences of the waiver of a right to appeal, does she retain that or what's the plea agreement say about that?

MR. HELFMEYER:  The defendant waives all rights to appeal except for the constitutional right to effective assistance of counsel.

THE COURT:  Okay.  Under what subsection of the rules are we going to?

MR. HELFMEYER:  11(c)(1)(a) and 11(c)(1)(b), Your Honor.

THE COURT:  Guidelines have been assessed for the judges to consider in determining the sentence in a criminal case.  Have you and your attorney talked about how these guidelines might apply to your case?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand I will not be able to determine the guideline sentence for your case until after a presentence report has been completed and you and the

government have had an opportunity to challenge the facts reported by the Probation Office?  Also, do you also understand after it's been determined what sentence applies relative to the guidelines, the judge has the authority to impose a sentence that's more severe or less severe than the sentence called for by the guidelines?

THE DEFENDANT:  Yes.

THE COURT:  Do you also understand that under some circumstances, you or the government may have the right to appeal any sentence that a Court imposes except to the extent that you've waived those rights and you've waived all those rights except for that one that was mentioned; do you understand that?

THE DEFENDANT:  I do.

THE COURT:  Also, do you understand that in the federal court system, it's different than the state system in that if any time is ordered to be served incarceration, that parole has been abolished under the federal system and if you're sentenced to prison, you will not be released on parole.

THE DEFENDANT:  Yes.

THE COURT:  If you would give me just a brief overview of what the rest of the agreement shows.

MR. HELFMEYER:  Yes, Your Honor.  In exchange for the defendant's plea of guilty to count one, the United States agrees to dismiss the remaining counts on the indictment.  The

United States agrees --

THE COURT:  How many counts?

MR. HELFMEYER:  There are a total of 13 counts in the indictment --

THE COURT:  Thirteen?

MR. HELFMEYER:  Yes, Your Honor.  Counts one through nine are punishable by 20 years.  Counts 10 through 13 are 10 years statutory maximum.

THE COURT:  And she's pleading to which one?

MR. HELFMEYER:  To count one, Your Honor, the drug --

THE COURT:  Thirteen counts.  All right.  Go on.

MR. HELFMEYER:  Yes, Your Honor.  The United States agrees to recommend that she receive three points for acceptance of responsibility.  The United States and the defendant agree to recommend to Probation and to the Court that the relevant conduct in this case is the equivalent of approximately 1,970 kilograms of converted drug weight which --

THE COURT:  I did that, I read that.  You can see I have the number here.  That equivalent, it's not in a pile, I understand that, but to 4,334 pounds, that's almost 2 tons equivalency, and that's a lot.

MR. HELFMEYER:  Yes, Your Honor.

THE COURT:  Okay.  All right.  Go on.

MR. HELFMEYER:  The United States and the defendant agree to recommend to Probation and to the Court that Section

3(B)1.1(b) applies because the defendant was a manager or a supervisor of a criminal enterprise involving five or more participants or that was otherwise extensive, corresponding with a three-level increase.  And the parties agree to recommend that she abused a position of trust as a physician, corresponding with a two-level increase under the guidelines.

THE COURT:  All right.  Are those basically the terms of the plea agreement as you understand them?

THE DEFENDANT:  That's correct.

THE COURT:  Has anyone made any other or different promise to you of any kind such as possible leniency or an offer of probation in order to get you to plead guilty in this case?

THE DEFENDANT:  No.

THE COURT:  Has anyone attempted in any way to threaten, force or coerce you into pleading guilty?

THE DEFENDANT:  No.

THE COURT:  I'm considering your plea of guilty under Federal Rule of Criminal Procedure 11(c)(1)(a) and (b).  Do you understand I may accept or reject this plea agreement as proposed?

THE DEFENDANT:  Correct, yes.

THE COURT:  Do you also understand if I accept your plea of guilty today, but reject the plea agreement, you still will not be able to withdraw your plea of guilty at a later

date?  Also, do you understand that the government's recommendation or your request for a particular sentence is not binding on the Court and I'm free to assess any punishment within the limits prescribed by law as I described to you earlier?

THE DEFENDANT:  Yes.

THE COURT:  Are you now ready to enter a plea to the one count to which you're pleading?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Counsel, do you know any reason why your client should not plead guilty?

MS. MCKEIVIER:  No, Your Honor.

MR. SMITH:  No, Your Honor.

THE COURT:  Do you know of any meritorious defenses she would have to the one count to which she's pleading?

MS. MCKEIVIER:  No, Your Honor.

MR. SMITH:  No, Your Honor.

THE COURT:  Before I can accept your plea of guilty, I need to make a determination there's a factual basis and that you are, in fact, guilty as charged.  If you would listen to the assistant U.S. attorney as he gives me a brief summary of what the evidence would have shown if this had gone to either a bench trial or a jury trial.  Counsel, go on.

MR. HELFMEYER:  Thank you, Your Honor.  The government would establish beyond a reasonable doubt that the defendant

knowingly and willfully conspired with Tomi-ko Bowers, Lester Stokes, Melvin Sampson and others to unlawfully distribute controlled substances, namely hydrocodone and Oxycodone.  From approximately 2022 through May of 2025, the defendant owned and was the prescribing physician at Recare Health Clinic, which is located in Kingwood, Texas.  Tomi-ko Bowers was a nurse practitioner at Recare, Lester Stokes was a security guard at Recare.

Prescriptions from Recare were issued using the defendant's DEA registration.  Many of Recare's customers were street-level drug traffickers known at Recare as, quote/unquote, providers.  They would purchase controlled substances for -- prescriptions, excuse me, for cash.  The defendant knew and understood that issuing controlled substance prescriptions to patients brought to Recare by these providers was unauthorized without a legitimate medical purpose and outside the usual course of professional practice.

Often the defendant did not conduct patient encounters at Recare.  Instead, Bowers, another nurse practitioner or a medical assistant would conduct the patient encounter.  Among Bowers's other responsibilities was maintaining appointment lists on which Bowers kept track of patients, prescriptions and cash.

Bowers or another Recare employee would include on the patient's appointment list entry the name of the patient's,

quote/unquote, provider.  Defendant and Ms. Bowers knew that prescribing controlled substances to patients identified in this way was unauthorized.

Melvin Sampson was among the other providers who brought patients to Recare.  Sampson's patients including individuals with the initials E.B., R.C., A.M., B.P., D.W., and M.W., each of whom received Oxycodone prescriptions from the defendant and in which the defendant knew were unauthorized. Other patients for whom the defendant knowingly issued unauthorized prescriptions for Oxycodone and hydrocodone included patients with the following initials, H.R., P.S., C.J., T.M., and D.Z.

On March 27, 2025, the DEA executed a search warrant at Recare.  For a time after the search warrant, Recare's operations changed.  However, on May 14th of 2025, Lester Stokes called co-conspirator and provider Melvin Sampson to tell Sampson that Recare was back taking new patients.  New patients subsequently received Oxycodone and hydrocodone prescriptions from the defendant and that the defendant knew that such controlled substance prescribing was unauthorized. In this manner, the defendant knowingly, intentionally and unlawfully distributed the equivalent of approximately 1,970 kilograms, or as the Court said, more than 4,000 pounds, of converted drug weight of the drugs hydrocodone and Oxycodone, her knowing and intending that such distribution was

unauthorized.  And finally in this manner, the defendant obtained approximately $143,000 cash from those prescriptions.

THE COURT:  Are these facts recited by the assistant U.S. attorney true?

THE DEFENDANT:  Yes.

THE COURT:  Did you intend to commit the acts as he just described, that is, did you know what you were doing at the time?

THE DEFENDANT:  Yes.

THE COURT:  You may now arraign the defendant as to the count involved in the plea agreement, otherwise the attorneys can waive the reading of the indictment.

MS. MCKEIVIER:  We would waive the reading of the indictment, Your Honor.

THE COURT:  All right.  As to the one count to which you pled, how do you plead, guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  Have you read and do you understand the plea of guilty agreement?

THE DEFENDANT:  Yes.

THE COURT:  If it's your desire, you may go ahead and sign it at this time.

MR. HELFMEYER:  And Your Honor, we provided a signed copy to Mr. Wells.  There was a typo on the first page that we've corrected and signed with initials, myself and Mr. Smith.

(Pause.)

THE COURT:  The Court's finding is as follows, I find the defendant is mentally competent at the present time.  I find there's a factual basis for the plea of guilty and that the defendant intended to do the acts she committed.  I find the defendant's plea of guilty is voluntarily and knowingly made and that the defendant understands the nature of these proceedings and understands the consequences of her plea of guilty.

Upon your plea of guilty, I find you guilty as charged on the one count to which you have pled and I will consider the parties' plea agreement before the imposition of sentence.

A written presentence report will be prepared by the Probation Office to assist me in sentencing.  You will be required to give information for the report and your attorney may be present if you wish.  The Court will permit you and your counsel to read the presentence report before the sentencing hearing, and at the sentencing hearing, you and your counsel will be given the opportunity to speak on your behalf at that time, and the Probation Office will contact you during the next few weeks.

All right.  We're going to talk about any release in a moment, I just want to get all this down.

The defendant needs to be present here for sentencing on June 4, 2026, at 1:30 p.m., with the notation that no

continuances will be given relative to that date that is set. Now, I'm going to go and I'm going to read, and I have, I want to go over this matter as far as -- I tell you what, you can have your client have a seat there.  I'll talk just to the lawyers at this point.  Just take that first chair is fine.

All right.  Number one, talking to the government's attorney.

MR. HELFMEYER:  Yes, Your Honor.

THE COURT:  You've been here now for a while, I think you know that for the last 39 years, or maybe you don't, but I'm not getting into that, everything filed in my court needs to be 14 point type, and it's not.

MR. HELFMEYER:  And Your Honor, I noticed that as I was looking at it and I apologize to the Court.  Every other filing --

THE COURT:  As long as you know that.

MR. HELFMEYER:  I do, Your Honor, and that was my mistake.

THE COURT:  The older you get, it's more difficult to read and even the Circuit requires 14 points, the rules of appellate procedure.  I'm going to go down here, I'm familiar with it, I've done many of these over the years.  I know that there's a mandatory requirement unless other matters, what is it, intervene and, what is it, and the continuing on bond.

Okay.  Let me ask you about the bond.  You know I do

this in the past and I do this routinely.  What about the bond in this case?

MR. HELFMEYER:  Yes, Your Honor, and the conditions, the material conditions of this defendant's bond are set forth on page four of the government's motion.  Importantly, the defendant has a third-party custodian.

THE COURT:  Who is that?

MR. HELFMEYER:  My understanding is that it is her adult daughter who is either a physician or a veterinarian that was appointed by Judge Bray.

THE COURT:  Now, I want to get into that right now.

MR. HELFMEYER:  Yes, Your Honor.

THE COURT:  Okay.  What it is is an eight million-dollar promissory note guaranteed by Dr. Qayum's third party.  Okay?

MR. HELFMEYER:  Yes, Your Honor.

THE COURT:  That is a requirement at this point, it's not a surety; is that right?

MR. HELFMEYER:  That is correct, Your Honor.

THE COURT:  What's securing that eight million-dollar -- it's one of the largest I've seen, including in that big Stanford Financial case.  But what's the background where there's $8 million available?  Okay, if, and I'm just saying if defendant runs, does that, what is it, third-party custodian have $8 million in property?

MR. HELFMEYER:  Your Honor, the short answer to the Court's question is no.  However, there's a longer answer to the question.

THE COURT:  Please.

MR. HELFMEYER:  Part of the $8 million is secured by two pieces of property.

THE COURT:  Hang on a second.

MR. HELFMEYER:  Yes, Your Honor.

THE COURT:  I've got the prices of that.  I think one is about 400,000, the other is about 168, something like that.

MR. HELFMEYER:  Yes, Your Honor.

THE COURT:  Where does that equate to anything close to $8 million?

MR. HELFMEYER:  Your Honor, it does not.  And I can tell the Court what the government's approach was at the bond hearing in front of Judge Bray and what I interpreted Judge Bray's understanding was and his expectations.  We had -- the government had moved for detention and we had a hearing.

THE COURT:  I saw that.

MR. HELFMEYER:  Yes.  And Judge Bray found that he could set conditions that would ensure the safety of the community and this defendant's appearance.  He wanted there to be property securing a significant bond which was satisfied by the two properties.  The government and Judge Bray agreed that there should be other things holding the defendant.  And what

we determined would be effective is if a member of her family, someone for whom she cares about deeply, was willing to put down a significant amount of money --

THE COURT:  Money or property?

MR. HELFMEYER:  It would be the promissory note, Your Honor, so it --

THE COURT:  A promissory note to who?

MR. HELFMEYER:  To the court if the defendant were to fail to appear.

THE COURT:  All right.  And who would have to pay the promissory note?

MR. HELFMEYER:  The third-party custodian, Your Honor.

THE COURT:  So somebody else would pay the whole thing, not this defendant?

MR. HELFMEYER:  Correct.

THE COURT:  Do they have the wherewithal to pay 8 million?

MR. HELFMEYER:  No, Your Honor.  However, the point of the promissory note was to show that there was somebody else who was responsible for this defendant, that would make sure that she appeared, but also that the consequences to her, were she to flee, would be the financial ruin of one of her children.  And Judge Bray and the government agreed that that was a condition that would ensure the defendant's appearance in court and satisfy the statute's requirements to protect the

community.

And Judge Bray thought hard about this, the government initially was opposed, but at the end was in agreement with Judge Bray.  And I would say that it worked, understanding the circumstances change when the defendant has pled guilty and has been convicted.

THE COURT:  It's a new ball game.  That's why we're talking about it and that's why I'm not rushing through it.

MR. HELFMEYER:  I understand, Your Honor.  However, I think that the conduct to date is a reflection that it was successful while the charges were pending.  The other --

THE COURT:  Where is she living now?  You tell me.  You know, you've been in front of me many times.  If you're going to recommend that, I want to know what the family connection is and where she's living and so forth from the government, not from the defense.

MR. HELFMEYER:  Your Honor, and I'll apologize, I have answers to the other questions that the Court asks.  That one, I know where she was living prior to her arrest.  I don't know if she's moved, Your Honor.

THE COURT:  All right.  Go on.

MR. HELFMEYER:  As a condition of bond and as a condition of her continued release, she surrendered her DEA registration.  As a result of that, her practice of medicine in the State of Texas is suspended.  She cannot and has not been

working as a physician.  If she were to continue to be released, she would not be practicing as a physician.  Her practice was closed and is no longer in operation after the execution of a search warrant in June of this last year.

THE COURT:  Of course, you can't do any of these cases without an M.D. or a D.O. somewhere within it, usually it's starting from the top down.  And that's right, you do have a leader or manager, so go on.

MR. HELFMEYER:  That's exactly right.  The defendant had to surrender her passport.

THE COURT:  Has or has not?

MR. HELFMEYER:  Has, she did, she had to, yes, Your Honor.

THE COURT:  How many passports does she have?  Because she's a citizen of this and Italy, I think.

MR. HELFMEYER:  And Your Honor --

THE COURT:  How many do you have?

MR. HELFMEYER:  Just one, and that's a mistake on my part, Your Honor, that she is just a citizen of the United States.  That was a holdover from a previous document.

THE COURT:  Hold on a second.  You tell me, is she a citizen of -- does she have dual citizenship?

MR. HELFMEYER:  No, Your Honor.

THE COURT:  How many passports does she have?

MR. HELFMEYER:  Just one, Your Honor.

THE COURT:  Which one?

MR. HELFMEYER:  United States.

THE COURT:  All right.  Go on.

MR. HELFMEYER:  In addition to that, her travel is restricted, and my understanding is that she asked the Court for permission to travel to the east coast.  The Court denied that permission and she has stayed in the jurisdiction since her arrest.  My understanding is that her current working conditions, she's not working, however, has recently applied for Social Security and has investments that she's been living off of, but I know that that's something the Court wants to know about her current work condition.  This would be -- the government's request would be that she remain on bond for the three months or two and a half months that the Court has set for the presentence investigation and preparing for sentencing.

THE COURT:  Hang on a second.  Let me keep going and see if I have any more questions.

(Pause.)

Since she was debriefing with you and you have that in here.  *Due to her debriefing*, what investigations have you -- without getting into anything confidential -- have you had?  Were any other indictments forthcoming on the information that she gave to you?  And you say, *And it's likely that she'll continue to find matters.*  What was the background on this defendant?

MR. HELFMEYER:  Your Honor, to date the answer is zero.  We're scheduled to meet with her.  I've received some information from counsel that gives me reason to believe that all of those things are the case.  But as of now, the answer is zero, Your Honor.

THE COURT:  Okay.  Let's hear from the defense please.

MR. SMITH:  As it relates to that question?

THE COURT:  No, to the whole thing, release on bond.

MR. SMITH:  Yes, Your Honor.  During this period of time, she has complied with her conditions of bond.  I would echo everything that the government has said.  She has complied with conditions of bond.  We did file a motion in July of 2025 for a travel which was denied.  The conditions of bond as outlined by the government in what they represented to the Court as well as in the filing is that was our take as well at the time of the detention hearing.  She currently lives at the same place she lived at the time of her arrest, and that is in the North Houston area.

THE COURT:  What city?  What is it, Kingwood?

MR. SMITH:  New Caney.

THE COURT:  All right.  Go on.

MR. SMITH:  As it relates to the debriefing, we have not debriefed.

THE COURT:  You have not?  Hold it a second.  Counselor, I thought you said you debriefed?

MR. HELFMEYER:  I've met with counsel to understand the nature and scope --

THE COURT:  You haven't met with the defendant.

MR. HELFMEYER:  That's correct, Your Honor.

THE COURT:  Okay.

MR. SMITH:  That's where I was going.  We have not --

THE COURT:  Sorry to cut you off.

MR. SMITH:  I understand, Your Honor.  We have not debriefed.  We have had numerous conversations where we have conveyed relevant information that I think would be extremely important to the government.  We are scheduled to debrief tomorrow.  Trying to make sure I hit all the Court's questions.

THE COURT:  We have plenty of time.  I set aside a number of hours for this.  You may agree or disagree with what's coming, but at least I'm zoned in on this case, so go ahead.  We have plenty of time.

MR. SMITH:  As part of the information that we provided to the government, it is our -- based on what we've conveyed to them, the need to have her out is more important than having her in.

THE COURT:  Because?

MR. SMITH:  Because of the information she has that's associated with the potential target in this case in which --

THE COURT:  She's not the potential target?

MS. MCKEIVIER:  Not for the debrief, Your Honor.

MR. SMITH:  Not for the debrief.

THE COURT:  Okay, go on.  I'll leave it right there. I don't want to get any further.  Yes, sir, go right ahead.

MR. SMITH:  And because of that, it is necessary for her to be out to be able to have access to the information that would make it a logistical nightmare to be able to try to provide if she was in custody.

MS. MCKEIVIER:  Your Honor?

THE COURT:  Yes, ma'am.

MS. MCKEIVIER:  Your Honor, some of that could include communications, documentation, physical evidence as well as, and we have not gotten there yet, but there's also the slim potential of active cooperation if this were to go the route that we have conveyed to the government and their interest has been shown.

THE COURT:  What does that mean?  Basically.  You don't have to go into detail.  I don't want to get into the background and the intent of the charging authority, but just give me a little more, just a little bit more.

MR. HELFMEYER:  If I can answer that question?

THE COURT:  Yes, please.

MR. HELFMEYER:  The difference of proactive cooperation would be potentially making phone calls or recorded communications.

THE COURT:  Okay.  All right.  I've considered

everything I've heard today. I appreciate the attorneys both coming in from out of town. At a distance I really do, I took a lot of time on this case, I took more than I usually would. But the ruling is that at this time the bond is withdrawn and the defendant is turned over to the United States Marshal Service for incarceration pending sentencing in this case. Court stands adjourned.

COURT CRIER: All rise.

*(2:31 p.m.)*

\* \* \*

*  *  *  *  *

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

     I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.  I further certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.

Date signed:  May 5, 2026

/s/ Angela M. Hailey

_____
Angela M. Hailey, CSR, CRR, RPR, RMR
Official Court Reporter
Southern District of Texas
Houston Division